## Case No. 15,805.

### UNITED STATES v. MOORE.

[Wall. Sr. 23.] [1]

Circuit Court, D. Pennsylvania. May 14, 1801.

CONTINUANCE—CRIMINAL PRACTICE—WITNESSES—COMPULSORY PROCESS.

A party charged with a crime, even before indictment found, may have compulsory process for his witnesses; but his omitting to use it is not such negligence as will deprive him of a continuance, if his witnesses be absent, though it will justify the court in imposing terms upon him.

An indictment was, in this term, found against the defendant for manslaughter, committed on board the ship Connecticut, lying in the river La Plata, in South America.

Milnor & Hopkinson, moved to put off the trial until the next court, on an affidavit, stating that Capt. Miller, of the United States ship Connecticut, and three other persons by name, who were on board at the time of the homicide, were material witnesses for him: that Miller and Flannery, two of the witnesses, had sailed from Philadelphia about ten days before: that the others, Dixon and Rush, had also gone on voyages, and that he expected to have their attendance at the next term. They further stated, that it had been proposed by them to the district attorney, to have the depositions of Miller and Flannery taken by consent before they sailed, which he declined. They then drew the depositions, and sent drafts, requesting him to cross-examine; which he also declined.

Mr. Dallas, U. S. Dist. Atty., said it was strictly right that the defendant should not be put upon his trial, if material evidence could be had at another time, and he had used due diligence without effect, to procure it at this time. But all these witnesses were in this city on the 3d May previous to the sitting of this court, and after the information lodged against the defendant, and his being committed on the charge of murder. He ought, therefore, to have taken out process against his witnesses, and had them bound over to appear at this term. He further stated that a number of the sailors, witnesses for the United States, had been committed and remained in gaol several months, for want of bail to testify on the traverse; and if the trial goes off, they must remain in imprisonment, though perfectly innocent, until next October, as they cannot procure bail for their appearance.

In Ratcliffe's Case, Fost. Crown Law, 41, though he swore to the absence of two material witnesses, one at Brussels, and the other at Saint Germains; and that he believed they would attend the trial if a reasonable time was allowed, yet the court refused to put off the trial, and that was in a capital case, and the prisoner hung.[2]

Before TILGHMAN, Chief Judge, and BASSETT and GRIFFITH, Circuit Judges.

GRIFFITH, Circuit Judge.—Mr. Dallas, can you show that before indictment found the person committed or bound to appear, and answer, &c., can have a capias against his witnesses to compel their attendance?

Mr. Dallas.—This is understood in practice in the criminal courts of the state, to be a matter of right, and is allowed; and by the 8th article of amendments to the constitution of the United States, it is provided, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

Milnor & Hopkinson replied.

BASSETT, Circuit Judge, to the counsel for the defendant.—Would you object to the terms of taking the depositions of the sailors, in custody, de bene esse, on the part of the United States, as a condition of our granting your motion?

Mr. Hopkinson.—We think the affidavit and facts entitle us to a postponement of trial unconditionally. We have great objections to the depositions of these sailors. We wish to examine them in court and before the jury. We have good reason to suspect a conspiracy among them, to fix this crime on the defendant. They have evinced the greatest heat and resentment towards him. A viva voce examination before the jury is necessary to our safety. On depositions, though we cross-examine, we shall lose the manner, appearance, temper, &c., of the witnesses, so important in weighing their credit.

THE COURT made some inquiry from Lewis and Ingersoll, gentlemen of the bar, whether it was understood to be the right of the person accused, before indictment, to have compulsory process from a magistrate or the court, for his witnesses. They answered, that it had been so practised in the state courts, and upon an idea that it was of right; but that no adjudication had been given on the point.

GRIFFITH, Circuit Judge.—Upon principle it struck me, that a person merely charged with an offence before a magistrate and previous to indictment found, and issue joined, could not of right have compulsory process for his witnesses; and I am not satisfied, that the 8th article of amendments to the constitution of the United States, makes any alteration of the previous law. I think that

---

1 [Reported by John B. Wallace, Esq.]

2 It was on the mere issue of identity, and not on the principal offence of treason, of which he had been before convicted and attainted, and made his escape from the tower. It will be seen from the case that it was a mere pretence to delay execution, and is no way to the point.

the "time when" he may demand compulsory process, is left in that article where it stood before; as it merely provides for his being confronted with the opposite witnesses, and that he is "to have compulsory process for witnesses in his favour." Reading it with the eye of a lawyer, all these provisions would seem to look to the situation of a person or offender already indicted, and having pleaded to the country. Then only, perhaps, within the legal construction of the words, can it be entitled a "criminal prosecution wherein the accused shall enjoy, &c." But I give no opinion on this point, because, however it might have been the right of the defendant, previous to the indictment found against him, and as soon as he was taken upon the charge of murder or manslaughter, to have obtained process to secure the witnesses on his behalf who are named in the affidavit; yet I do not think for the purpose of enabling him to put off the trial for their absence, the omission of taking out such process, before an indictment found, can be considered as negligence, or want of due diligence, so as to deprive him of the full benefit of his affidavit proving their departure and absence at this time. In my opinion, it is sufficient for him to show, that after an indictment found, he has used due diligence, and cannot procure his testimony; and if he bring his cases within the usual requisites, it is matter of right to postpone the trial. Many reasons may exist to induce a party upon a mere charge of an offence, to decline any expense or labor in procuring witnesses. He may feel conscious of innocence, and believe that no bill will be found. He cannot always know precisely the nature of the accusation, nor foretell what will be the future presentment of the grand jury. He may, therefore, if he will, safely wait, without having laches imputed to him, till a bill is actually found, and he pleads to it; and from that time only is he legally bound to use diligence in preparing for trial. I am therefore of opinion, that the defendant is within the general rule, and is entitled, as of right, to a postponement of the trial; and being so, we ought not to annex a condition to it which may subject him to disadvantages, perhaps little short of proceeding to trial in the absence of the witnesses. As to the situation of the sailors who are in custody as witnesses, with my consent they shall not be imprisoned longer on that account. If they cannot get bail, their own recognizances ought to be accepted. It is contrary to the first principles of natural justice, to imprison men who are innocent, merely because they are too poor and friendless to find bail for their appearance as witnesses. If the United States may imprison witnesses, so may the party accused, and a whole ship's crew might lay in gaol for six months or a year.[3]

---

[3] It has been the practice in Pennsylvania to commit to prison such witnesses for the commonwealth as cannot find security for their appearance at court to testify, in cases where the

BASSETT, Circuit Judge.—The defendant was charged with this offence and committed for it, some months ago. He had counsel employed; he knew the nature of the prosecution; his witnesses were all in Philadelphia within a few days past; and in my opinion, he might have had process to secure their attendance at this court, before the indictment found. He knew of their being about to depart also, just before the court. For these reasons, I think there appears a want of due diligence in the defendant, in securing his testimony in the event of a bill being found. At the same time, I do not think this omission, being antecedent to an indictment, is of a nature to deprive the defendant of the benefit of a postponement of the trial, upon the grounds stated in his affidavit, of due diligence having been used since the indictment, and the absence of his material witnesses. But as he might have taken out process for the witnesses (though perhaps not strictly bound to prepare for his trial before an indictment) and the witnesses might have been detained, I am of opinion that this was such negligence, as will authorize the court to annex the condition proposed. I shall therefore be for allowing the motion on the terms of taking the depositions of the witnesses on the part of the United States, who are in gaol, before one of the judges, with leave on the part of the defendant, to cross-examine.

TILGHMAN, Chief Judge.—I am of opinion that the defendant should take his motion, but subject to the terms mentioned by his honor, Judge BASSETT. I ground myself upon the construction of the eighth article of amendments to the constitution of the United States; and I wish to have it understood as my decided opinion, that a party charged with a crime, and bound to answer, or committed for it, may have compulsory process for his witnesses, in that stage of the prosecution. It is a "public prosecution," and is instituted and commenced when the party, by process, or otherways, is brought before a court or magistrate, and on information or proof is held to answer. The subsequent indictment is but a continuation of the prosecution so begun. Any other construction would seem to me against the letter of the article, and very injurious to the party under the prosecution. He ought to be on equal ground with the prosecutor. Witnesses, at that stage, may be bound over, or brought in on process for the United States, and why not for the accused? Many cases might be put to illustrate the hardship of the contrary construction. A

---

justice does not think their personal recognizance sufficient; but I find no authority for it. By the statutes of 1 & 2 Phil. & M. c. 13, and 2 & 3 Phil. & M. c. 10, the justice has power to bind the witnesses by recognizance or obligation to testify, and if they refuse to be bound, to commit them for contempt. The same power is said to be virtually included in their commissions; but it is no where said that they may be compelled to find security, or be committed. See 2 Hale, P. C. 52, 282.

man is accused of murder, and brought before a magistrate of the United States, and committed for trial. He sees a person present who can prove his innocence, an alibi, or that the homicide was se defendendo. He knows this person is to depart from the United States for a foreign country, and that he is never expected to return. In such a case what should we say, if he had no means to secure the evidence of this witness? Still, however, I agree, that to the purpose of postponing the trial, the affidavits are sufficient; but because there might have been process to have kept these witnesses, that will authorise us to put the defendant under equitable terms. Take your motion, upon consent to examine the witnesses for the United States de bene esse.

This was done; the sailors examined and discharged.